

# THE ATTORNEY GENERAL
## OF TEXAS

October 16, 1986

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable H. Tati Santiesteban
Chairman
Natural Resource Committee
Texas State Senate
P. O. Box 12068
Austin, Texas    78711

Opinion No.  JM-562

Re:   Applicability of an energy
conservation code to areas which
are  provided  electric  utility
service by a city but are out-
side its corporate boundaries

Dear Senator Santiesteban:

You ask whether a home rule city may enforce its energy conserva-
tion code outside its boundaries but within its certified electric
service area.   You inform us that a home rule city adopted an energy
conservation code pursuant to section 35 of article 1175, V.T.C.S.
You suggest that this statute or article 1108, V.T.C.S., authorizes a
home rule city to enforce its conservation code within the areas to
which the city provides electric service.

Home rule cities derive their power directly from article XI,
section 5, of the Texas Constitution. Lower Colorado River Authority
v. City of San Marcos, 52: S.W.2d 641, 643 (Tex. 1975).   Because a
home rule city's powers within their boundaries are plenary, it is
necessary to look for express or implied limits on those powers rather
than for grants of power.  See id.  To exercise powers outside its
boundaries, however, a home rule city must have an express or implied
grant of power from the legislature.  City of Austin v. Jamail, 662
S.W.2d 779, 782 (Tex. App. - Austin 1983, writ dism'd); Attorney
General Opinion JM-226 (1984).   You suggest that articles 1175 and
1108 contain the necessary authority for the contemplated action.

Article 1175 enumerates some of the powers of home rule cities.
Section 35 of article 1175 provides:

> A home-rule city may require all buildings to
> be constructed in accordance with energy conserva-
> tion standards included in the building code, if
> any.

This provision fails to specify that it applies outside the boundaries
of a home rule city.

Article 1108 provides:

> Any town or city in this State which has or may
> be chartered or organized under the general laws

of Texas, or by special Act or charter, and which owns or operates waterworks, sewers, gas or electric lights, shall have the power and right:

1. To own land for such purposes within or without the limits of such town or city.

2. To purchase, construct and operate water, sewer and gas and electric light systems inside or outside of such towns or city limits, and regulate and control same in a manner to protect the interest of such town or city.

3. To extend the lines of such systems outside of the limits of such towns or cities and to sell water, sewer, gas, and electric light and power privileges or service to any person or corporation outside of the limits of such towns or cities, or permit them to connect therewith under contract with such town or city under such terms and conditions as may appear to be for the best interest of such town or city; provided that no electric lines shall, for the purposes stated in this section, be extended into the corporate limits of another incorporated town or city.

4. To prescribe the kind of water or gas mains or sewer pipes and electric appliances within or beyond the limits of such town or city, and to inspect the same and require them to be kept in good order and condition at all times and to make such rules and regulations and prescribe penalties concerning same, as shall be necessary and proper. (Emphasis added).

Article 1108 applies to home rule cities and authorizes them to provide retail electric services to areas beyond their corporate boundaries. City of Lubbock v. South Plains Electric Cooperative, Inc., 593 S.W.2d 138, 142 (Tex. Civ. App. - Amarillo 1979, writ ref'd n.r.e.); Attorney General Opinion M-1136 (1972).

The dispositive question in the case at hand is whether article 1108 contains sufficient implied authority for a city to enact and enforce an energy conservation code in connection with the city's extension of service outside its boundaries. Section 2 of article 1108 authorizes a city to "regulate and control [its electric system] in a manner to protect the interests of such city or town." Section 3 allows the city to extend service "under such terms and conditions as may appear to be for the best interest of such town or city. . . ." Section 4 authorizes the city to prescribe the kind of "electric appliances" used and "to inspect the same and require them to be kept in good order and condition at all times and to make such rules and

regulations and prescribe penalties concerning same, as shall be necessary and proper." Energy conservation is logically in the "best interest" of a city that provides electric service.

The court in Port Arthur Housing Company v. City of Port Arthur, 181 S.W.2d 1017 (Tex. Civ. App. - Beaumont 1944, writ ref'd w.o.m.), dealt with an extension of water service outside of the city's boundaries pursuant to article 1108. A city ordinance required the payment of an inspection fee, an inspection, and the installation of a drum trap under all bathtubs as a condition to receipt of water service. Stating that any such regulation must be, above all, reasonable, the court upheld all three requirements. 181 S.W.2d at 1019-20. The court upheld the drum trap requirement because the court found the reasons for the requirement reasonable. The rationale behind the requirement was twofold: (1) to protect the city's water mains from contamination, and (2) to preserve the system's water pressure and supply. 181 S.W.2d at 1020. Thus, the court's reasoning enforces the idea that article 1108 encompasses the conservation of resources.

Similar considerations apply to the use of electricity. Accordingly, article 1108 provides the implied authority for a city to enact and enforce provisions designed to protect its electrical distribution system both inside and outside of its boundaries in the areas to which the city provides electric service. As indicated in the Port Arthur case, regulations under article 1108 must be reasonable. Article 1108 does not, however, contemplate a comprehensive energy conservation building code. This opinion is not intended to address any particular home rule city's energy conservation regulations. Nor does it address problems arising when an out of boundaries extension of service falls within another municipality. See generally Port Arthur Housing Co. v. City of Port Arthur, supra; State ex rel. Richmond Plaza Civic Association v. City of Houston, 270 S.W.2d 235 (Tex. Civ. App. - Galveston 1954, writ ref'd n.r.e.); City of New Braunfels v. City of San Antonio, 212 S.W.2d 817 (Tex. Civ. App. - Austin 1948, writ ref'd n.r.e.).

                          S U M M A R Y

Article 1108, V.T.C.S., authorizes a home rule city which operates its own electric service company to enact and enforce reasonable regulations which protect the city's electrical distribution system inside its boundaries and outside its boundaries in the areas to which it provides electric service.

Very truly yours,

JIM MATTOX
Attorney General of Texas

p. 2499

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General